

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TM:NMA
F.#2008R01567

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 19, 2011

**By ECF**

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Peter DeFilippo, et al.
     Criminal Docket No. 09-672 (S-1)(NGG)

Dear Judge Garaufis:

  The defendant Peter DeFilippo is scheduled to be sentenced by the Court on Friday, July 22, 2011. The government respectfully submits this letter in response to the defendant's letter application dated May 13, 2011, requesting a non-Guidelines sentence of home detention based upon, among other things, his personal circumstances. For the reasons set forth below, the government respectfully submits that Court should (1) sentence the defendant to a term of imprisonment within the advisory Guidelines range of 21 to 27 months,[1] (2) impose restitution in the amount of $6,000, and (3) impose a significant fine.

I. Background

  The defendant is an associate of the Bonanno organized crime family of La Cosa Nostra ("Bonanno family"), a violent criminal organization.[2] According to a cooperating witness

---

 [1] This Guidelines range is based upon an offense level of 16 and a Criminal History Category of I, including a three-point adjustment for acceptance of responsibility.

 [2] DeFilippo's status as an associate is also corroborated by consensual recordings and information provided by other

("CW#1"), between 2005 and 2008, DeFilippo was the project manager associated with a construction project in Newark, New Jersey ("Newark project"), who was responsible for providing Bonanno family captain Anthony Sclafani, Bonanno family acting captain Joseph Loiacono and others with kickbacks from the project.

CW#1 worked as a plumber on the Newark Project. In 2007, at the direction of Loiacono and Sclafani, DeFilippo cashed CW#1's paychecks from the Newark project without the permission of CW#1, and proceeded to provide Loiacono with money from the paychecks to be applied toward the loanshark debt owed by CW#1 to Loiacono. In addition, DeFilippo used Loiacono and Sclafani to extort John Doe, another individual employed at the Newark project, to make "kickback" payments to DeFilippo related to John Doe's employment at another construction project.

As a result of this and other conduct, on October 7, 2009, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with racketeering, including predicate acts of extortion and extortion conspiracy, racketeering conspiracy; extortion; extortion conspiracy; and bank fraud. On March 10, 2010, the grand jury returned a superseding indictment, which did not substantively alter the charges against the defendant. On December 21, 2010, the defendant pled guilty to Count Eleven of the superseding indictment, which alleged that the defendant conspired to participate in the affairs of the Bonanno family through the collection of unlawful debt, in violation of 18 U.S.C. § 1962(d).

II. A Guidelines Sentence Is Appropriate and Reasonable

A. Legal Standard

It is now settled law, pursuant to the United States Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), that the Guidelines are advisory, not mandatory, id. at 258-59, and that a sentencing court has the authority to fashion a reasonable and appropriate sentence in a given case. However, the Supreme Court further held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id.

In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of

---

witnesses.

2

consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall, 552 U.S. at 49-50(citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) sets forth factors to be considered by the Court in imposing a sentence, including, inter alia, the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training.

B.  History and Circumstances of the Offense

The defendant's conduct with regard to CW#1 and John Doe underlines his commitment to profiting financially through illegal activity and through his organized crime connections. With regard to John Doe, the defendant concedes that he felt he deserved a 10% percent kickback - as he put it, a "finder's fee" - for plumbing work procured by John Doe.  The defendant even concedes that he received $2,000 of the $10,000 he felt was owed. The defendant only denies what he cannot admit, that he was paid the $2,000 and indeed, demanded to be paid additional monies, by threatening John Doe with his mafia associates, Sclafani and Loiacono.

According to CW#1, Sclafani and Loiacono began to repeatedly ask CW#1 to find John Doe because DeFilippo needed to speak to him about a job.  Over time, Sclafani and Loiacono, as well as DeFilippo, told CW#1 that John Doe owed DeFilippo money related to a construction kickback.  CW#1's information is corroborated in detail by consensual recordings, evidence that the defendant does not address because he cannot refute it.  For example, during a February 29, 2008 consensually recorded meeting, Sclafani directed CW#1 to call John Doe and put him in touch with DeFilippo about a job because DeFilippo has been trying to get in touch with John Doe.  Thereafter on May 9, 2008, Loiacono was consensually recorded telling CW#1 that John Doe

3

owed money because "he never took care of his obligation," and that CW#1 should tell John Doe that they have work for him so that he will get in touch with them.  On May 23, 2008, CW#1 advised Loiacono that he had spoken to John Doe; in response, Loiacono was consensually recorded stating, "He owes us money. He owes Pete (a reference to the defendant) money.  For that job. I don't know how much. $3,000, $4,000."

       Finally, during a June 6, 2008 consensually recorded meeting, Loiacono explained the situation with John Doe to CW#1, as follows:

- John Doe bid a job in Livingston, New Jersey worth $95,000 to $100,000.

- DeFilippo spoke to John Doe and told him he entered John Doe's bid at $115,000.  DeFilippo told John Doe that if he were awarded the job, DeFilippo would expect 10% of the value of the bid and John Doe agreed.

- John Doe had already paid DeFilippo $2,500, so he still owed $8,500.

Subsequently, on June 20, 2008, Loiacono told CW#1 during a consensually recorded meeting:

> We don't want anything on what he's doing now (referring to John Doe's current construction project). We got him in there though (referring to the Newark project).  Tell him, 'don't be a jerkoff cocksucker.' Cause, seriously, if you know where this kid lives, we're gonna hurt him then.  We are gonna hurt him. He'll get hurt.  He'll get hurt.  Tell him.  I think Pete (a reference to defendant DeFilippo) knows the address.  We'll get him.  We'll get this kid.

During an August 22, 2008 consensually recorded meeting, Sclafani asked Loiacono who had dealt with John Doe, and Loiacono replied, "DeFilippo did."  During that meeting, Loiacono advised Sclafani that he had spoken to DeFilippo about John Doe and told him, "You got the kid's number, or his address, let's get him."  During a September 25, 2008 consensually recorded meeting, Loiacono advised CW#1 that he had obtained John Doe's address and that he intended to go there early in the morning, stating, "I just want him to know somebody was there, at the house.  That makes these guys usually fucking get a little crazy."  On November 17, 2008, FBI Special Agents executed a search warrant on Loiacono's person and recovered directions to the purported residence of John Doe.

4

These recordings clearly and irrefutably show that DeFilippo was providing Loiacono and Sclafani with information about John Doe in order to use their mafia positions to collect money from John Doe. DeFilippo's contention that CW#1 alerted Sclafani and Loiacono to the situation is plainly belied by a review of the evidence in the case. During these recordings, it was Loiacono and later Sclafani who initiated discussion of John Doe's debt to DeFilippo and <u>who provided CW#1</u> - not the other way around - with details about John Doe and the purported debt owed to DeFilippo.

### C. History and Characteristics of the Defendant

The defendant suggests that he should be given a sentence of home detention because of his personal circumstances, including that he is "an accomplished business man and professional." That fact however counsels in favor of an incarceratory sentence. The defendant is educated and is savvy enough to own and manage several lucrative businesses. His decision to participate in the mafia and to benefit from his mafia connections at the expense of others is even more reprehensible. Moreover it was the defendant's status as a businessman that enabled him to commit the crimes to which he pled guilty. With regard to CW#1, the defendant took CW#1's paychecks without authorization and cashed them, providing the money to members of the mafia.

Additionally, one of the businesses the defendant points to in support of the notion that he has a "talent for business" was the subject of a criminal investigation in the Eastern District of Michigan. As set forth in the Pre-Sentence Report, in that case, the defendant clearly cut corners with regard to the disposal of hazardous material in order to make money. (PSR ¶¶ 110-118). This behavior indicates that the defendant is driven by greed. In sum, DeFilippo is a defendant in this case because he made conscious, intentional choices to commit illegal activity in order to make money. For his choices, the defendant should serve a custodial sentence within the advisory Guidelines range.

Finally, the defendant argues for a non-Guidelines sentence because he is "genuinely loved and respected by his family and friends," and because his family depends on him for financial support. The former argument - that individuals not involved with or aware of the defendant's criminal activities love him or respect him - does not bear upon the propriety of a sentence. As for his latter argument - that his family is dependent on his employment - even if true, that circumstance is

often the case for incarcerated defendants, and a circumstance the defendant himself was well aware of when he undertook this criminal conduct.

        D.    The Need for the Sentence Imposed

Given the defendant's association with Bonanno family and in particular, his conduct in using Loiacono and Sclafani to threaten and extort John Doe, a sentence of incarceration is appropriate. In fact, a lesser sentence would promote disrespect for the law. See, e.g., United States v. Cutler, 520 F.3d 136, 154 (2d Cir. 2008) (concluding that the district court made errors in certain "Guidelines applications and in its departure decisions; that the sentences imposed did not properly interpret certain of the sentencing factors that the court was required to consider under 18 U.S.C. § 3553(a), such as just 'punishment' and deterrence of others; and that some of the court's rationales would promote disrespect for the law"). Defendant DeFilippo should thus be sentenced within the applicable advisory Guidelines range of 21 to 27 months.

III. A Fine Within the Advisory Guidelines Range is Warranted

Additionally, since the defendant has a positive net worth of over $600,000, the Court should impose a significant fine within the Guidelines range of $6,000 to $60,000.

IV.    Conclusion

For the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 21 to 27 months, and a fine within the Guidelines range of $6,000 to $60,000.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                       By:    /s/
                             Nicole M. Argentieri
                             Assistant United States Attorney

cc:  Michael Galeno, Esq. *(by ECF)*
     Senior Probation Officer Patricia Sullivan *(by Mail)*